UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 1:19-cr-139 |
| vs. | : | Judge Timothy S. Black |
| RON CRAIG ESTES, | : | |
| Defendant. | : | |

**ORDER ON DEFENDANT'S MOTION:**
**(1) DENYING RELEASE UNDER 18 U.S.C. § 3582(c)(1)(A); AND**
**(2) GRANTING REDUCTION UNDER 18 U.S.C. § 3582(c)(2)**

This criminal case is before the Court on Defendant's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) and/or for a sentencing reduction pursuant to 18 U.S.C. § 3582(c)(2) (Doc. 35), and the Government's memorandum of partial opposition (Doc. 37).

### I. BACKGROUND

On December 12, 2019, Defendant Ron Craig Estes was charged by way of a two count Information with: mail fraud, in violation of 18 U.S.C. § 1341 (Count 1); and embezzlement and theft from an employee benefit plan, in violation of 18 U.S.C. § 664 (Count 2).

On January 28, 2020, Defendant appeared before this Court and, upon waiving his right to indictment, entered a plea of guilty to both counts of the Information. (Min. Entry, Jan. 28, 2020; Doc. 10). And Defendant entered his plea pursuant to a Rule 11(c)(1)(B) agreement, which agreement included the parties' non-binding stipulations as to a portion of the guideline computation but otherwise allowed the parties to make

further arguments as to the guidelines and the appropriate sentence, all of which remained entirely within the Court's discretion. (Doc. 2).

At the time of his plea hearing, Defendant admitted to the facts set forth in his Statement of Facts, in full. (Doc. 2 at 7-8; Min. Entry, Jan. 28, 2020).

Specifically, Defendant owned and operated a commercial construction company and was, therefore, required to abide by the Occupational Safety and Health Administration's ("OSHA") rules and regulations. (*Id*. at 7). Defendant, however, admitted that he devised and participated in a scheme to skirt OSHA regulations. (*Id*.) Specifically, in order to save time and costs, Defendant admitted that he obtained fraudulent employee-training certifications, rather than providing OSHA's required safety training and supervision to his employees. (*Id*.) Defendant further admitted to submitting the fraudulent training documents when bidding for contracts, which thereby allowed him to undercut competitors and obtain contracts through fraudulent means. (*Id*.)

As to Count 2, Defendant admitted to embezzling approximately $40,000 from a 401(k) retirement benefit plan established for the benefit of his employees. (*Id*. at 8). Specifically, Defendant used the personal identifying information of his former employees to fraudulently complete distribution forms on their behalf and then directed that distribution checks be mailed to Defendant's business address. (*Id*.) Upon receipt, Defendant would forge employees' signatures on the checks and cash them for his own benefit and use. (*Id*.) Defendant admitted that "[he] sought to take advantage of these

2

workers, knowing that they were limited English proficient or undocumented and unlikely to complain of being defrauded." (*Id*.)[1]

Defendant's PSR was completed on March 30, 2020. (Doc. 15 at 2). However, the PSR's final disclosure was continued on multiple occasions, at the request of Defendant and the Probation Officer, in order to resolve questions regarding restitution, as well as to await the receipt of Defendant's medical records and to ensure that the PSR fully set forth the status of Defendant's health and medical needs. (Not. Orders, May 21, 2020; Jul. 15, 2020; Aug. 24, 2020; Nov. 18, 2020; Jan. 7, 2021; Feb. 8; 2021; Mar. 25, 2021). After all revisions were made, the Final PSR was ultimately completed and disclosed on April 16, 2021. (Doc. 15).

As stated in the PSR and ultimately calculated by the Court, Defendant's offense conduct resulted in a Total Offense Level of 13, a Criminal History Category III, and a Guideline Range of 18 to 24 months imprisonment. (*Id*. at 39; Doc. 20 at 2). Notably, Defendant qualified as a Criminal History Category III at the time based on a sub-total criminal history score of three, plus a two-point add-on for committing the offense while under a criminal justice sentence; resulting in a total score of five. (Doc. 15 at 18).

On December 14, 2021, the case proceeded to sentencing, at which time the Court sentenced Defendant to a term of 18 months imprisonment on each count, to be served

---

[1] At the time of his plea hearing, Defendant confirmed, under oath, that everything contained in his Statement of Facts was entirely correct. Nevertheless, at sentencing, Defendant objected to the PSR's inclusion of a 2-level enhancement under § 3A1.1(b)(1) of the Guidelines, which enhancement applies if a defendant knew or should have known that the victims of the offense were vulnerable. The Court overruled the objection, and the enhancement was applied.

concurrently, followed by 3 years of supervised release. (Doc. 19). The Court agreed to allow Defendant to self-surrender, with a reporting date of March 4, 2022. (Min. Entry, Dec. 14, 2021). Subsequently, Defendant filed multiple motions seeking to extend his self-surrender date, all of which were premised on Defendant's medical needs. (Docs. 24, 26, 28, 31). In total, the Court granted four extensions, delaying Defendant's voluntary surrender by nearly two years, all to allow Defendant to keep scheduled medical appointments and receive care from his personal physician, as well as to avoid incarcerating Defendant during the COVID-19 pandemic. (Docs. 25, 27, 32, 33). On February 9, 2023, this Court's granted Defendant his final extension, setting his self-surrender date for September 1, 2023. (Doc. 33).

On December 19, 2023, *i.e.*, less than three months after surrendering to serve his 18-month sentence, Defendant filed the instant motion for compassionate release. (Doc. 35). In the alternative, Defendant seeks a reduction of his sentence, based on the retroactive application of Guideline Amendment 821. (*Id.*) The Government opposes Defendant's motion as to compassionate release. (Doc. 37). Further, the Government agrees that Defendant qualifies for retroactive reduction of his Guideline range, but does not believe that a corresponding reduction of Defendant's sentence is warranted. (*Id.*)

## II.   STANDARD OF REVIEW

### A. Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)

"[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment," and "the court may not modify a term of imprisonment once it has been imposed," subject to limited exceptions. 18 U.S.C. § 3582(b), (c); *Dillon v. United*

4

*States*, 560 U.S. 817, 824 (2010). One such exception permits the Court to reduce a term of imprisonment, either upon a motion brought by the Bureau of Prisons ("BOP"), or on the defendant's own motion, seeking compassionate release. *Id*. at § 3582(c)(1)(A)(i). A defendant may file a motion for compassionate release with the Court after exhausting the BOP's administrative process, or thirty days after the warden receives the defendant's compassionate release request, whichever is earlier. *Id*. at § 3582(c)(1)(A).

To grant a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A), the Court must: **first**, find that "extraordinary and compelling reasons warrant [] reduction [of the sentence]"; **second**, find that the reduction is "consistent with applicable policy statements issued by the Sentencing Commission" (specifically, U.S.S.G. § 1B1.13); and **third**, consider the applicable 18 U.S.C. § 3553(a) factors. *United States v. Elias*, 984 F.3d 516, 518 (6th Cir. 2021) (citing *United States v. Jones*, 980 F.3d 1098, 1101 (6th Cir. 2020).

However, pursuant to Sixth Circuit precedent, the second step of the Court's three-step § 3582(c)(1)(A) inquiry—*i.e.*, finding that the reduction is consistent with U.S.S.G. § 1B1.13—does **not** apply to motions brought by the *defendant*. *Jones*, 980 F.3d at 1109 (citing *United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020)); *Elias*, 984 F.3d at 519 (noting the Sixth Circuit's holding is consistent with the Second, Fourth, and Seventh Circuits, as well as the majority of district courts).

"The district court has substantial discretion," in deciding a motion for compassionate release. *United States v. Ruffin*, 978 F.3d 1000, 1005 (6th Cir. 2020)

("The statute says that the district court 'may' reduce a sentence if it finds the first two requirements met; it does not say that the district court must do so").

Defendant bears the burden of showing that he is entitled to compassionate release. *E.g.*, *United States v. Kannell*, No. 20-12635, 2021 WL 223485, at *1 (11th Cir. Jan. 22, 2021) ("The movant bears the burden of proving entitlement to relief under section 3582"); *United States v. Melgarejo*, 830 F. App'x 776, 778 (7th Cir. 2020) ("[the defendant] did not meet his burden of demonstrating that his circumstances were extraordinary and compelling"); *cf. United States v. McClain*, 691 F.3d 774, 777 (6th Cir. 2012) (holding that the defendant bears the burden to show he is entitled to reduction of sentence under 18 U.S.C. § 3582(c)(2)).

### B. Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c)(2)

Pursuant to 18 U.S.C. § 3582(c)(2), the Court may reduce a previously imposed sentence "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission …." Before granting such a reduction, the Court must consider the applicable 18 U.S.C. § 3553(a) factors and must ensure that the reduction is consistent with the Sentencing Commission's relevant policy statements. 18 U.S.C. § 3582(c)(2).

### III. ANALYSIS

### A. Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)

Defendant first moves this Court for an Order granting compassionate release, pursuant to 18 U.S.C. § 3582(c)(1)(A). Because Defendant, through counsel, has brought his own motion for compassionate release (as opposed to a motion brought by the BOP),

6

the Court must undertake the first and third steps of the § 3582(c)(1)(A) inquiry. Accordingly, the Court will consider whether "extraordinary and compelling reasons" warrant a reduction in Defendant's sentence and, if so, will further consider whether such a reduction is warranted in light of the relevant section 3553(a) factors.

*1. Extraordinary and Compelling Circumstances*

First, the Court must find that "extraordinary and compelling reasons warrant [the sentencing] reduction." 18 U.S.C. § 3582(c)(1)(A)(i). The statute does not define the term "extraordinary and compelling reasons," and Congress delegated the task to United States Sentencing Commission. *See Ruffin*, 978 F.3d at 1004. However, "[i]n cases where incarcerated persons file motions for compassionate release, <u>federal judges … have full discretion to define 'extraordinary and compelling'</u> without consulting the policy statement § 1B1.13." *Jones*, 980 F.3d at 1111 (emphasis added).

Here, Defendant moves this Court for an Order granting his compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), citing his ongoing need for bladder cancer screening and his pre-scheduled appointments with his personal physician. (Doc. 35). Specifically, Defendant notes that, "as part of his cancer survivor protocol," he undergoes regular screening to check for cancer recurrence and, in the event that a recurrence is detected, he must immediately undergo swift and aggressive treatment. (*Id*. at 7-8).[2]

---

[2] According to letters from Defendant's personal physician, Defendant's cancer screening protocol included a cystoscopy every three months for two years, after which the frequency would be reduced to every six months for another two years, until finally screenings occur annually. (Doc. 35 at 17-23). At this time (and at the time of his self-surrender), Defendant is in the bi-annual screening stage of the protocol. (*See*, *e.g.*, Doc. 30 at 4) (showing appointment frequency reduced to every six months following July 17, 2023 appointment).

Defendant asserts that, should a recurrence be detected while he is incarcerated, the BOP's procedures would call for his transfer to another facility and allegedly redundant testing, all of which would result in Defendant receiving delayed treatment. (*Id*. at 8).

As an initial matter, and for clarification, Defendant was current with his screenings at the time of his self-surrender, no recurrence has been detected at this time, and the Government has confirmed with the BOP that, while incarcerated, Defendant is scheduled for his appointments and is receiving treatment through BOP-contracted physicians. (Doc. 30 at 4; Doc. 35 at 7-9, 17-23; Doc. 37 at 3).

Additionally, in support of his concern over delayed treatment, Defendant cites to the BOP's practice of transferring inmates to Federal Medical Centers to receive specialized medical care, as well as historical delays in the BOP's medical treatment facilities. (Doc. 35 at 8). But Defendant does not identify any inadequacies that he has experienced personally, nor does he cite to any BOP policy or procedure that would necessitate the type of delays that Defendant claims he will experience. Thus, Defendant's argument is entirely speculative.

More significantly, however, "facts that existed at the time of sentencing do not constitute an extraordinary and compelling reason warranting a subsequent sentence reduction," unless Defendant offers "evidence as to how these conditions have worsened since his sentencing." *United States v. McKinnie*, 24 F.4th 583, 588 (6th Cir. 2022). Here, Defendant's medical history and screening/treatment needs were in fact known to the Court and thoroughly considered at the time of sentencing. (*See*, *e.g.*, Doc. 15 at 20-22; Doc. 17 at 9). Indeed, Defendant's sentencing was delayed for over a year, in large

8

part, to accommodate Defendant's health issues and to await the receipt of Defendant's medical records. And Defendant has offered no evidence to suggest that the status of his health has changed, let alone worsened, since the time of sentencing.

In short, this Court already considered and accounted for Defendant's health at the time it imposed a custodial sentence of 18 months. Defendant's condition has not worsened, and Defendant's arguments that the BOP poses a potential risk to his health are speculative at best. Thus, the law in this Circuit forecloses Defendant's early release.

### 2. 18 U.S.C. § 3553(a) Factors

Having found that no "extraordinary and compelling reasons" exist to warrant compassionate release, the Court may deny the motion on that finding alone. *See Elias*, 984 F.3d at 519 ("[D]istrict courts may deny compassionate-release motions when any of the [required] prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others") (citing *Jones*, 980 F.3d at 1108; *Ruffin*, 978 F.3d at 1006). However, even assuming *arguendo* that "extraordinary and compelling reasons" existed, the Court nevertheless finds that compassionate release is unwarranted based upon its consideration of all applicable § 3553(a) factors.

In short, at the time of sentencing, this Court, upon consideration of the relevant 18 U.S.C. § 3553(a) factors, sentenced Defendant to a term of 18 months imprisonment, *i.e.*, the low end of his guideline range. For purposes of Defendant's motion, this Court has again considered the applicable 18 U.S.C. § 3553(a) factors and, having done so, finds that the imposed sentence is appropriate. Indeed, the Court finds that the imposed sentence of 18 months imprisonment is sufficient but not greater than necessary, and

9

further finds that granting compassionate release would fail to fully address the purposes of sentencing.

### B.  Reduction Pursuant to 18 U.S.C. § 3582(c)(2)

In the alternative, Defendant moves the Court to reduce his sentence from 18 months to 15 months, noting that he qualifies for retroactive application of Amendment 821 of the United States Sentencing Guidelines.  (Doc. 35).  The Government agrees that Defendant qualifies for retroactive application of Amendment 821 but, otherwise, believes that a reduction in Defendant's sentence is unwarranted.  (Doc. 37).

Amendment 821, Part A of the Sentencing Guidelines "amended §4A1.1 (Criminal History Category) to limit the overall criminal history impact of 'status points' (*i.e.*, the additional criminal history points given to defendants for the fact of having committed the instant offense while under a criminal justice sentence …)."  U.S. Sent'g Comm'n, Guidelines Manual § 1B1.10, comment. (n.7) (Nov. 2023).  Specifically, prior to November 2023, the Sentencing Guidelines instructed the Court to "[a]dd 2 points if the defendant committed the instant offense while under any criminal justice sentence, including probation …."  USSG § 4A1.1(d) (Nov. 2021).  However, after Amendment 821, Part A took effect in November 2023, the Guidelines now instruct the Court as follows: "Add 1 point if the defendant (1) receives 7 or more [criminal history] points …, *and* (2) committed the instant offense while under any criminal justice sentence, including probation …."  USSG § 4A1.1(e) (Nov. 2023) (emphasis added).  Moreover, the Sentencing Commission made Amendment 821, Part A applicable retroactively,

thereby allowing qualifying defendants to seek a sentencing reduction pursuant to 18 U.S.C. § 3582(c)(2).  USSG § 1B1.10, p.s.

Here, at the time of sentencing, Defendant received a sub-total of three criminal history points.  However, because Defendant committed the offense of conviction in this case while under a criminal justice sentence (specifically, while on probation to the state court for a 2014 attempted drug possession conviction), he also qualified for and received an additional two-point increase, pursuant to § 4A1.1(d) of the 2021 Guidelines Manual.  (Doc. 15, ¶¶ 75, 84; Doc. 20 at 1); *see* USSG § 4A1.1(d) (Nov. 2021).  As a result, Defendant received a total criminal history score of five, placing him in Criminal History Category III.  Based on Defendant's Total Offense Level 13, a Criminal History Category III resulted in a Guideline range of 18 to 24 months.  (Doc. 20 at 1).  The Court sentenced Defendant to 18 months, *i.e.*, the low-end of the range applicable at the time.

However, under the amended Guidelines, the Court agrees that Defendant no longer qualifies for the two-point criminal history score increase, given that the increase is now applicable only if, as an initial matter, a defendant receives a sub-total of at least seven criminal history points.  Because Defendant does not meet this criteria, the fact that he was otherwise under a criminal justice sentence carries no penalty.

Accordingly, Defendant receives an amended criminal history of three, placing him in Criminal History II (as opposed to III) and, in turn, his Guideline range is reduced to 15 to 21 months (as opposed to 18 to 24 months).  USSG, Ch. 5, Pt. A.

In that regard, reducing Defendant's sentence to 15 months reflects the low-end of Defendant's amended Guideline range and is, therefore, consistent with the Court's

original sentencing determination. Moreover, upon consideration of the applicable 18 U.S.C. § 3553(a) factors, the Court finds that such a reduction is appropriate. Accordingly, pursuant to 18 U.S.C. § 3582(c)(2), Defendant's request for a sentencing reduction to 15 months, is well-taken.

### IV.    CONCLUSION

Based upon the foregoing, Defendant's motion (Doc. 35) is **DENIED IN PART and GRANTED IN PART**. Specifically, the Court **DENIES** Defendant's request for compassionate release, pursuant to 18 U.S.C. § 3582(c)(1)(A); however, the Court **GRANTS** Defendant's request to reduce his sentence from 18 months to 15 months, pursuant to 18 U.S.C. § 3582(c)(2).[3]

**IT IS SO ORDERED.**

Date:  4/1/2024                                                                  *s/ Timothy S. Black*
                                                                                              Timothy S. Black
                                                                                              United States District Judge

---

[3] The Court will separately issue a standard AO 247 Order to memorialize the sentencing reduction.